# EXHIBIT A

# TO REMOVAL PETITION

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

FILED IN OFFICE
CLERK OF STATE C
GWINNETT COUNTY, GE
**20-C-0773**
11/6/2020 11:5

CLERK OF STATE C

**Kaushik Patel**

PLAINTIFF

CIVIL ACTION NUMBER: 20-C-07737-S6

VS.

**Natvarlal Umrigar**

DEFENDANT

A TRUE COPY
TIME: _____
DATE: 11/6/21
WAYNE IVEY, Sheriff
BREVARD COUNTY, FLORIDA
By BCSO #325

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose nam and address is:

Kenneth Behrman
5855 Sandy Springs Cirle
Suite 300
Atlanta, Georgia 30328

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **6TH** day of **NOVEMBER**, 20**20**.

Richard T. Alexander, Jr.,
Clerk of State Court

By _____
Deputy Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

CLERK OF STATE CC
GWINNETT COUNTY, GEOI
20-C-07737
11/6/2020 11:57

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| KAUSHIK PATEL, | * | |
| Plaintiff | * | Civil Action File Number |
| vs. | * | |
| NATVARLAL UMRIGAR, | * | 20-C-07737-S6 |
| Defendant | * | |

## COMPLAINT

Comes Now, KAUSHIK PATEL, plaintiff in the above styled action and shows this Honorable Court the following:

1.

Defendant Natvarlal Umrigar can be served with service of process, via second original, by serving him at his residence, to wit: 1944 Dobbs Road, Alexander City, Tallapoosa County, Alabama 36010.

2.

On or about July 11, 2018, plaintiff Patel and defendant Umrigar entered into a broker agreement. Said agreement is reflected in Exhibit A to this complaint.

3.

The execution of the agreement occurred in Gwinnett County State of Georgia.

4.

Defendant is subject to the jurisdiction and venue of this court.

5.

In consideration of plaintiff assisting defendant in obtaining a mortgage loan to purchase a Days Inn hotel in Cocoa, Florida, defendant promised to pay plaintiff a $5,000.00 processing fee plus a two percent (2%) broker fee based upon the loan amount.

6.

Defendant paid the $5,000.00 processing fee.

7.

As a result of plaintiff's assistance, defendant was able to obtain a mortgage loan to buy the aforesaid property.

8.

In August, 2019, the loan closed for three million five hundred twenty thousand dollars ($3,520,000.00); however, defendant has not paid plaintiff the two percent (2%) brokerage fee.

9.

Defendant breached the agreement and owes plaintiff the principal sum of seventy thousand four hundred dollars ($70,400.00).

10.

In addition, and as part of the contract, defendant owes plaintiff a late payment fee of one percent (1%) compounded per month.

11.

Defendant also owes plaintiff reasonable attorney fees/expenses for defendant being in bad faith, stubbornly litigious and/or in bad faith pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff prays Defendant be served with the summons and complaint, and Plaintiff receive a judgment against defendant for the principal sum of seventy thousand four hundred dollars ($70,400.00), late fees of 1% compounded monthly since August, 2019, attorney fees, expenses, costs of court and any other relief this court deems just and proper.

Respectfully,

*/s/ Kenneth Behrman*
Kenneth Behrman
Attorney for Plaintiff
Ga. Bar #: 046995

5855 Sandy Springs Circle
Suite 300
Atlanta, Ga. 30328
phone: (770) 952-7770
facsimile: (770) 952-6775
ken.behrman@behrmanlaw.com

# EXHIBIT A

## BROKER AGREEMENT

The undersigned (hereinafter referred to as the "Applicant(s)") hereby agree(s) to enter into this **BROKER AGREEMENT**(hereinafter referred to as the "Agreement") to retain KAUSHIK "KEITH" PATEL (hereinafter referred to as the "Broker") to assist the Applicant(s) NATVARLAL V UMRIGAR DBA DAYS INN 102 Rooms to obtain a purchase money COMMERCIAL mortgage loan from a lender (hereinafter referred to as the "Lender") in the original principal amount of approximately ( Dollars.) + or - 3,734,000 ($). Dollars, + or - upon such terms and conditions as the Applicant(s) may request or a Lender may require (hereinafter referred to as the "Mortgage Loan" or "LOAN"), which Mortgage Loan will be secured by a first-lien mortgage at the following address: 5600, HIGHWAY 524, COCOA FLORIDA 32926 (hereinafter referred to as the "Property") and/or property which is identified in Exhibit "A".

N.V.U

Broker is engaged in mortgage lending brokering activities in accordance with Georgia Law. Broker has its principal office and place of business at OAKBROOK PLAZA 1770 INDIAN TRAIL ROAD Norcross GA 30093.

### Section 1. Services of Broker.

Broker shall assist the Applicant(s) to obtain a (mortgage) loan for which Broker may render one (1) or more of the following services to the Applicant(s):

- A. Identify and describe the loan products that may be available to the Applicant(s) and related eligibility requirements;

- B. Based upon information supplied by the Applicant(s), counsel the Applicant(s) on the amount of debt for which the Applicant(s) may qualify and the types of mortgage loan products that may satisfy the needs of the Applicant(s), subject to a Lender's guidelines;

- C. Identify problems that may impair the eligibility of the Applicant(s) for mortgage financing, based upon a Lender's guidelines;

- D. Assist the Applicant(s) in completing all necessary forms, including the loan application package;

- E. Review the accuracy and completeness of the information provided by the Applicant(s);

- F. Order certain reports as they may become necessary in the loan application process, including, but not limited to, a credit report on the Applicant (s), a property appraisal, a verification of employment and a verification of deposit;

- G. Make a preliminary, non-binding determination of the eligibility of the Applicant(s) for the Mortgage Loan requested, according to a Lender's guidelines, by performing a preliminary underwriting analysis;

- H. Submit the loan package to any one (1) or more Lender(s) that Broker deems appropriate. The Lender shall have sole responsibility for underwriting, approving, closing and funding the loan, and providing the Applicant(s) with any required disclosures;

- I. Coordinate the acceptance of any approval or commitment by the Lender, and counsel the Applicant(s) as to the satisfaction of any outstanding conditions set forth in any such approval or commitment; and

- J. From time to time, upon request of a Lender with which Broker has placed a loan application, serve as its liaison with the Applicant(s) for subsequent correspondence and communication.

N.V.U

**Section 2. Limits on Services.** Although Broker may engage in certain mortgage lending activities in Georgia, in connection with this (Mortgage) Loan, Broker is acting in the capacity of mortgage broker. Accordingly, Broker cannot make the (Mortgage) Loan or issue a commitment for the (Mortgage) Loan, or guarantee acceptance into any particular loan program, or promise any specific loan terms or conditions. In connection with this (Mortgage) Loan, only the Lender can approve the Applicant(s), issue a loan commitment, make or fund the loan, or agree to its terms or conditions.

Applicant(s) acknowledges and agrees that, with respect to Broker services being performed herein, Broker has no authority, express or implied, to: (i) guarantee acceptance into any particular loan program; (ii) issue a commitment to make a loan; (iii) approve the Applicant(s); or (iv) make or fund a (mortgage) loan. Applicant(s) understand(s) and acknowledge(s) that this Agreement does not represent a commitment by Broker to accept a loan application for processing for its own account.

**Section 3. Duties of Applicant(s).** In addition to the payment of any fees required pursuant to this Agreement, the Applicant(s) agree(s) to provide Broker, and any lender with which the application is placed, true, complete, and accurate information upon request. The Applicant(s) agree(s) to cooperate fully in the processing of the application, and at all times act in good faith with respect to Broker and any lender with which the application is placed. Failure to cooperate could delay the processing of the Mortgage Loan application. The Applicant(s): (i) shall disclose to Broker any application with any other broker or lender for mortgage financing secured by the Property which the Applicant(s) (has) (have) made within the past thirty (30) days; and (ii) shall not apply for mortgage financing to be secured by the Property with any other broker or lender while this Agreement is in effect, unless the Applicant(s) disclose(s) such application to Broker.

**Section 4. Compensation of Broker.**

**A. Mortgage Broker Fee.** A fee of ( 2.00% ) of the loan amount is due and payable to Broker at the time of closing as compensation for services rendered. This fee is required by Broker. It is not imposed by the Lender; however, it will be disclosed by the Lender in connection with all finance charge disclosures. The Lender will fund the loan.

The Applicant(s) agree(s) to pay Broker this Mortgage Broker Fee subject to the following terms. The Applicant(s) authorize(s) payment of this Mortgage Broker Fee directly to Broker by: (i) the settlement agent from the closing costs which the Applicant(s) must pay at the time of the Mortgage Loan closing; or (ii) by the Lender from the proceeds of the Mortgage Loan, to the extent that this fee is financed.

Subject to applicable law, the Applicant(s) acknowledge(s) and agree(s) that by its execution of this Agreement, the Mortgage Broker Fee to be collected at loan closing by Broker: (i) is paid to compensate and reimburse Broker for the services that Broker will perform under this Agreement; and (ii) shall be earned fully by Broker upon the Lender's notification to Applicant(s), either orally or in writing, or loan approval (including any approval that is conditioned upon the Applicant(s) satisfying any outstanding Lender requirements relating to the verification or eligibility or other matters not materially changing the terms or types of mortgage financing for which Applicant(s) applied, regardless of whether this Agreement either is terminated subsequent to the performance of such services or whether the Applicant(s) elect(s) not to close the Mortgage Loan after the Mortgage Loan has been approved by the Lender. If the Mortgage Loan is not funded, Broker reserves the right to recover any such compensation due and owing upon written demand to the Applicant(s) by Broker. For the purposes of this Agreement, Broker shall have earned its Mortgage Loan Origination Fee, or Mortgage Broker Fee, if, within Thirty Six (36) Months of the execution of this Agreement, the Applicant(s) obtain(s) approval for mortgage financing from a Lender to which Broker submitted the loan application of Applicant(s) or/to any other financial institutions the Broker fee Must be paid a FEE for services received by the Applicant(s) if the Applicant(s) Receive a LOAN from another BANK/FINANCIAL INSTITUTION without the BROKER'S KNOWLEDGE Broker must be paid HALF a POINT of total LOAN AMOUNT ..

**B. Processing Fee.** In connection with this loan application, a processing fee of $ 5000 ^will be charged: (i) for assisting in the completion of the application; (ii) for processing the loan package; (iii) for determining the accuracy of its content; (iv) for assembling the loan closing documents; and (v) for any other procedures required by

a Lender. If a processing fee is charged, the Applicant(s) agree(s) to pay Broker a processing fee of ($) Dollars. This processing fee is in addition to the Mortgage Broker Fee, and shall be paid by the Applicant(s) to Broker: (i) if the loan closes at the time of the mortgage loan closing; or (ii) to transfer an assembled loan package to another broker, or to a lender different from any lender(s) contacted by Broker.

**C. Lender Contracted Fees to Broker.** In addition to the Mortgage Broker Fee and Processing Fee paid to Broker by the Applicant(s), Broker also may share with the Lender some or all of the points paid by the Applicant(s) to the Lender at the time of the Mortgage Loan closing, including, but not limited to, yield spread premium, servicing release fees, etc., regardless of the name by which such item(s) is/are called. The rates, points, fees and other terms quoted to the Applicant(s) by or on behalf of the Lender in connection with this Mortgage Loan include any such shared consideration which shall be deducted, as required by law. [The Lender also may agree to pay Broker additional consideration for which the Applicant(s) is/are not responsible.] The total amount of compensation paid to Broker which Applicant(s) is/are responsible for, in connection with this Mortgage Loan, will be disclosed on the HUD-1 Settlement Statement, etc. provided to the Applicant(s) at or before closing.

N.V.W

D. Broker's earned fee. The Broker shall be deemed to have earned one-half, (50%) of his fee upon the issuance of the Commitment Letter by the Lender. Said fee shall be due in full and payable regardless of the outcome of the transaction.
Client is Waving all the RIGHTS to a TRIAL.
Late payment of the Fees will be charged at 12% on the on the OUTSTANDING BALANCE Compounding Monthly 1% which will not be Negotiated.
Broker Reserves the right to put a Lien on the Clients Commercial Properties or Residential Properties for Non Payment without Notice.

**Section 5. Third Party Fees.** In addition to the Mortgage Broker Fee and/or Processing Fee paid by the Applicant(s) to Broker, the Applicant(s) agree(s) to pay Broker certain non—refundable fees for payment to third parties for services to be performed in connection with the processing of this loan application. These third-party fees are in addition to the fees that will be collected at the time of closing from the Applicant(s), or added to the loan principal, for necessary settlement services, as required by the Lender and identified on the Good Faith Estimate of Settlement Services. The following third-party fees will be charged at the time of application, as indicated:

| Fee will be charged | Fee will not be charged | |
|---|---|---|
| _____ | _____ | (1) A property appraisal fee of approximately _____ ($_____) Dollars, depending upon the kind of property being valued. A copy of the appraisal report is available upon request. |
| _____ | _____ | (2) _____ ($_____) Dollars for each factual credit report ordered. _____ ($_____) Dollars for each in-file report ordered. |



The fees for such third—party services are incurred once the services are ordered, and are non—refundable of the Mortgage Loan is closed, not approved, or fails to close, or if the Applicant(s) withdraw(s) the application or decides not to take the approved loan. The Applicant(s) agree(s) to pay the fees for a property appraisal, credit report, and

N.V.W

any other third-party fees as required by Lender upon the signing of this Agreement. The fee collected for each service is a fair approximation of the costs for such service at this time. The actual costs billed to Broker for such services, however, may change, or differ from these estimates for reasons not known to Broker at the time that this Agreement is signed. If the actual total cost for such services exceeds the amount collected at this time, the shortage will be recovered at the time of closing. No portion of the total amount collected will be refunded if such amount exceeds the actual total cost of such services, unless otherwise required by applicable law.

**Section 6 Governing Law.** This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of Georgia, without regard to its conflict of laws rules.

**Section 7. Entire Agreement.** This Agreement contains the entire agreement between the parties and supersedes all prior agreements, arrangements, or understandings relating to the subject matter thereof. There are no written or oral agreements, understandings representations, or warranties between the parties other than those set forth in this Agreement. A copy of this signed Agreement will be delivered to the Applicant(s) upon request.

By signing below, the Applicant(s):

1. Agree(s) to be bound by the terms and conditions of this Agreement.

2. Authorize(s) Broker to order and release to any Lender with which Broker may do business, any credit report or other credit data for use in evaluating the credit of the Applicant(s).

3. Acknowledge(s) the receipt of a copy of this Agreement.

If you have any further questions in connection with this Agreement, please direct them to the Broker's Loan Officer named below:

Kaushik "Keith" Patel, Broker
Ravi Chirag Inc.

*[signature]*

Agreed & accepted, this 11thDay of JULY, 2018

By: NATVARLAL V UMRIGAR *[signature]* DATE: 7/11/18
                  Applicant

Name: NATVARLAL V UMRIGAR
SS# [redacted]
Title: PRESIDENT

Name:                          Applicant
SS#
Title:                         Date:_____

*[handwritten]:* LOAN HAS BEEN SATISFACTORY AND HAS BEEN ACCEPTED BY ME NATVARLAL V UMRIGAR AND IS CLOSING IN THE AMOUNT OF $3,520,000

*[signature]* N.V.U
1/20/19